IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICHARD WEEMS, as the surviving spouse of NANCY WEEMS, | ) ) ) NO. 3:21-cv-00293 |
| Plaintiff, | ) ) JUDGE RICHARDSON |
| v. | ) ) |
| OMNI HOTELS MANAGEMENT CORPORATION, | ) ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Pending before the Court is Defendant Omni Hotels Management Corporation's motion for summary judgment (Doc. No. 44, "Motion"). Defendant filed a memorandum in support (Doc. No. 45). Plaintiff filed a response (Doc. No. 49, "Response"), and Defendant filed a reply. (Doc. No. 56, "Reply").

For the reasons discussed herein, the Court will grant Defendant's Motion.

## BACKGROUND

### A. Factual Background[1]

The current plaintiff, Richard Weems, is the surviving spouse of the original plaintiff Nancy Weems (referred to herein as "Plaintiff"), who was a citizen of South Carolina. Defendant Omni Hotels Management Corporation, a Delaware corporation, owns the hotel where Plaintiff

---

[1] These facts are taken from Plaintiff's Response (Doc. No. 50) to Defendant's Statement of Undisputed Material Facts (Doc. No. 46) and the complaint (Doc. No. 1-2). They are construed as undisputed because Plaintiff indicates in Plaintiff's Response (Doc. No. 50) that she does not dispute them and/or affirmatively asserts them herself (in the complaint).

tripped and injured her hip. Plaintiff was staying at Omni Nashville Hotel (the "Hotel") on September 20, 2020. That night, some time before 10 p.m. while it was dark, she entered the pool area of the Hotel. While going to check out the hot tub, she tripped over a lounge chair, injuring her hip.

B. Procedural Posture

Plaintiff filed a claim in the Circuit Court of Davidson County, Tennessee, alleging that Defendant acted negligently in leaving poorly lit conditions with chairs that blend into floor the around the pool area, and that this caused Plaintiff to trip on a chair and fall. (Doc. No. 1-2 at 3-4). On April 12, 2021, Defendant filed a notice of removal in this Court pursuant to 28 U.S.C. § 1332(a) based on diversity jurisdiction. (Doc. No. 1). On November 21, 2022, Plaintiff's counsel filed a suggestion of death notifying the Court that Plaintiff unfortunately passed away in October 2022, and her surviving spouse, Richard Weems, was substituted as a party. (Doc. No. 60).

Defendant filed the Motion pursuant to Fed. R. Civ. P. 56. According to Defendant, summary judgment against Plaintiff is appropriate because, according to Defendant: (a) "Omni is immune from liability by Tennessee's Recreational Use Statute Tenn. Code Ann. § 70-7-101, *et seq.*," and (b) "Plaintiff cannot establish the elements of premises liability as a matter of law." (Doc. No. 45 at 2).[2] Thereafter, the Response and Reply were filed.

LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

---

[2] Defendant uses the term "premises liability" to refer to a claim of negligence against a landowner.

that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. See *id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing Anderson, 477 U.S. at 248), *abrogated on other grounds by Young v. Utd. Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support a material fact (for example, the existence of an element of a nonmovant plaintiff's claim)." Fed. R. Civ. P. 56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Pittman, 901 F.3d at 628. Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at

trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex*, 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed (i.e., any party seeking summary judgment and any party opposing summary judgment, respectively) can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact.[3]

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id.* The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

---

[3] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

DISCUSSION

Defendant raises two grounds for summary judgment. That is, defendant argues (1) Omni is immune under T.C.A. § 70-7-101, *et seq.*, and (2) Plaintiff cannot establish essential elements of her negligence claim. (Doc. No. 45 at 2). The Court addresses these two arguments in turn.

A. Tennessee Recreational Use Statute

The Tennessee Recreational Use Statute, T.C.A. § 70-7-101, *et seq.*, limits the liability of landowners who hold open their land for certain recreational purposes. T.C.A. § 70-7-102 provides:

> The landowner, lessee, occupant, or any person in control of land or premises owes no duty of care to keep such land or premises safe for entry or use by others for such recreational activities as hunting, fishing, trapping, camping, water sports, white water rafting, canoeing, hiking, sightseeing, animal riding, bird watching, dog training, boating, caving, fruit and vegetable picking for the participant's own use, nature and historical studies and research, rock climbing, skeet and trap shooting, skiing, off-road vehicle riding, and cutting or removing wood for the participant's own use, nor shall such landowner be required to give any warning of hazardous conditions, uses of, structures, or activities on such land or premises to any person entering on such land or premises for such purposes, except as provided in § 70-7-104.

If a guest uses or intends to use land for a recreational activity as defined by the statute, then the landowner is protected from liability. *Mathews v. State*, No. W200501042COAR3CV, 2005 WL 3479318, at *4 (Tenn. Ct. App. Dec. 19, 2005). A landowner may be protected from liability even if the reactional activity at issue is not explicitly listed in the statute, so long as the activity is comparable to those listed. *Costner v. Maryville-Alcoa-Blount Cnty. Parks & Recreation Comm'n*, No. E202100189COAR3CV, 2022 WL 3092906, at *8 (Tenn. Ct. App. Aug. 3, 2022).

Defendant argues that the Recreational Use Statute protects it from liability because Plaintiff was attempting to use the hot tub, which (according to Defendant) constitutes a recreational activity, on Defendant's land. In quoting the Recreational Use Statute, Defendant

highlights "water sports" and "sightseeing," seemingly suggesting that using a hot tub is or is comparable to water sports and sightseeing. (Doc. No. 45 at 7-8).

But in the Court's view, using a hot tub is comparable to neither water sports nor sightseeing. Examples of water sports include jet skiing, surfing, rowing, water polo, etc. Water sports involve significantly more risk than using a hot tub, as they involve much more speed, exertion and/or physical contact than mere sitting in a hot tub.[4] The legislature sought to encourage landowners to provide access to these risky activities without being chilled by potential liability. That same policy objective does not apply to non-risky activities such as using a hot tub.

Using a hot tub is also not like sightseeing. In *Costner*, the court held that attending a concert in a park is comparable to sightseeing and birdwatching. *Costner* 2022 WL 3092906 at *9. Such a comparison is apt because one attends a concert in the park for the purpose of witnessing something of interest. That is not the case with using a hot tub generally, and there's no reason to think Plaintiff sought to use Defendant's hot tub to see anything of note. None of the other activities listed in § 70-7-102 are comparable to using a hot tub either.

Thus, Defendant is not immune from liability under T.C.A. § 70-7-101, *et seq*.,

B. <u>Negligence</u>

Under Tennessee law, a negligence claim requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause-in-fact; and (5) proximate or legal cause. *West v. E. Tennessee Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn.

---

[4] The Court realizes that, depending on the temporary or permanent physical and mental condition of the user of a hot tub, use of a hot tube (especially of done in solitude) poses a risk (although surely generally a very small one) of drowning or injury from near-drowning. In this sense, use of a hot tube shares something in common with certain water sports. However, to the extent that such similarity exists, it is not a similarity that serves in any way to make sitting in a hot tub the kind of activity that was within the purview of the policy objective served by the Recreational Use Statute.

2005). Plaintiff may seek to establish these elements with direct evidence. Alternatively, Plaintiff may seek to rely on the doctrine of res ipsa loquitur, whereby the manner in which the injury was sustained leads to the conclusion that breach of duty and causation-in-fact are satisfied even without direct evidence. *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 526 (Tenn. Ct. App. 2002).

Plaintiff argues that she meets all the elements with direct evidence and alternatively argues that res ipsa loquitur, which would establish breach of duty and causation-in-fact, applies here. The Court finds that Defendant has met its burden in showing that Plaintiff cannot establish that Defendant's allegedly negligent conduct caused-in-fact or proximately caused Plaintiff's injury, so as to negate the fourth and fifth elements of negligence. Furthermore, the Court finds that Plaintiff cannot establish her claim via res ipsa loquitur.

1. *Direct evidence of cause-in-fact*

The cornerstone of cause-in-fact is the but-for test. The Court asks whether the injury would have occurred but-for defendant's allegedly negligent conduct. *West*, 172 S.W.3d at 553 (Tenn. 2005). A positive answer to that question means that there is no causation in fact.

Plaintiff's theory underlying her claim is that "[a]s Plaintiff began to walk toward the hot tub at the end of the pool area she tripped over a lounge chair which she did not see, that was not readily apparent, that was to her right side and out of place with the other lounge chairs as she was walking toward the hot tub." (Doc. No. 1-2 at 2). Plaintiff argues that Defendant did not sufficiently illuminate the pool area, particularly given the lounge chairs were dark and blended in with the dark floor. She argues that this conduct fell below the standard of care, and that this conduct caused her to trip and incur her hip injury.

Regardless of whether the pool area was sufficiently illuminated according to the standard of care, no reasonable jury could find that Plaintiff's hip injury was caused by the way Defendant

set up the pool area. Plaintiff testified that she could see the chair she tripped over prior to reaching the chair. (Doc. No. 46-1 at 43). According to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, Plaintiff does not dispute that "if [she] had looked down, she would have been able to see the lounge chair" and that "[she] also saw the lounge chair prior to reaching it." (Doc. No. 50 at 14).[5] She also could see "real good" the line of chairs she was walking next to. (Doc. No. 46-1 at 17-19). She testified that the reason she tripped over the chair was that she was not looking down. (Doc. No. 46-1 at 43). Plaintiff also stated that none of the chairs appeared to be out of place. *Id.* at 19-20. This testimony shows that even if Defendant did not sufficiently illuminate or distinguish (from the surrounding nighttime environment) the chairs according to the standard of care, Plaintiff still saw them. Thus, even if the area was fully lit and the chairs did not have a dark coloring, there is every reason to believe that Plaintiff would have tripped, and a contrary conclusion would be based on mere far-fetched speculation. There is no genuine dispute that, given how Plaintiff conducted herself in walking in the pool area, she would have tripped (caused herself to trip and fall) even if Defendant had not failed to adequately illuminate the pool area. Plaintiff's entire theory is disproven by her own testimony.

And none of Plaintiff's cited evidence contradicts her testimony (which, as noted above, cuts crucially against her) or indicates causation-in-fact such that a reasonable jury could find in her favor. Plaintiff primarily points to three videos of the Hotel's pool area and testimony by Defendant's expert that the chair is a shade of brown similar to the hue of the floor where the chair was located. (Doc. No. 49 at 11). Two of the videos are security videos taken by Defendant, and

---

[5] Given that these facts are undisputed, at least "for purpose of ruling on a motion for summary judgment," (Doc. No. 50 at 14), the Court does not understand the assertions in Plaintiff's brief that "the level of darkness turns out was too much for her to distinguish between the dark brown lounge chairs and the dark brown wood decking under the lounge chairs" and "the chairs and decking were not readily apparent to [Plaintiff.]" (Doc. No. 49 at 15-16).

the other was taken by Plaintiff's grandniece, Ashley Purvis. None of these three videos supports in any way the notion that Plaintiff tripped because of Defendant's conduct in insufficiently illuminating the pool area. The first security video shows a non-pertinent area of the pool—namely the area behind the bar area, which is not near where Plaintiff fell and lacked any similar furnishings. The second security video does not clearly show the degree of visibility of the chairs, for two reasons. First, the video is in black and white, not color. Second, there is an obstruction in the video that covers the relevant area around the chairs. Finally, the video taken by Ashley Purvis does show the relevant area near the pool, and it shows that area where Plaintiff fell is quite dark. But the Ashley Purvis video was taken the day after the incident, and Plaintiff testified that when she tripped it was lighter in the pool area than is reflected in the video. (Doc. No. 46-1 at 62). These videos therefore do not contradict Plaintiff's testimony that she could see the chair she tripped over. And the fact that the chairs have a similar shading to the floor does not do so either.

Thus, no reasonable jury could find via direct evidence that Defendant's conduct, even if negligent, was the causation-in-fact of Plaintiff's injury.

### 2. *Res ipsa loquitur*

Res ipsa loquitur is an "evidentiary principle [that] assists a plaintiff by furnishing circumstantial evidence of negligence when direct evidence may be lacking." *Jenkins v. Big City Remodeling*, 515 S.W.3d 843, 848 (Tenn. 2017) "When res ipsa loquitur applies, it allows, but does not require, the fact finder to infer negligence from the circumstances of the injury." *Id.* "Plaintiffs [appropriately] relying on res ipsa loquitur need not prove specific acts of negligence by the defendant to get their case to the jury." *Burton*, 129 S.W.3d at 523.[6] Specifically, "[i]t

---

[6] In citing herein to Tennessee state court opinions, the Court keeps the following in mind:

permits an inference that the defendant breached a duty it owed to the plaintiff. It also permits an inference that the defendant's conduct, whatever it was, caused the plaintiff's injury." *Id.* at 526. Even if res ipsa loquitur applies, a plaintiff must still otherwise prove defendant had a duty to plaintiff, harm occurred, and that defendant's conduct was proximate cause of the harm. *Id.* Under Tennessee law, "courts must take care to avoid applying the res ipsa loquitur doctrine in a way that undermines our system of tort liability based on fault." *Id.* at 524.

"To rely on res ipsa loquitur, a plaintiff must show that (a) the event that caused the injury is of a kind that ordinarily does not occur in the absence of negligence [on the part of someone in the defendant's position]; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the negligence is within the scope of the defendant's duty to the plaintiff." *Jenkins*, 515 S.W.3d at 849. Importantly, the applicability of res ipsa loquitur is not a jury question, but rather a question for the court. *Id.* ("The trial court determines if the plaintiff has established a sufficient foundation for res ipsa loquitur to apply."). Based on the undisputed facts, here the Court has little difficulty concluding that both the first and second elements of res ipsa loquitur are absent and that therefore res ipsa loquitur is inapplicable. Specifically, as to the first element, the event that caused Plaintiff's injury—tripping over a chair— is *not* of a kind that ordinarily does not occur in the absence of negligence by the premises owner

---

In diversity cases such as this, we apply state law in accordance with the controlling decisions of the state supreme court. *See Prestige Cas. Co.,* 99 F.3d at 1348 (applying Michigan law). If the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data. *See id.* "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the Michigan Supreme Court would decide otherwise." *Kingsley Assoc. v. Moll PlastiCrafters, Inc.,* 65 F.3d 498, 507 (6th Cir.1995).

*Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001).

who placed the chair, but rather is of a kind that regularly occurs based on the tripper's negligence without the premises owner doing anything wrong. And as to the second element, consistent with the discussion above, causes of Plaintiff's tripping *other than* Defendant's negligence *cannot* be eliminated; to the contrary the evidence suggest that the cause was Plaintiff's own conduct in not looking where prudence dictated she should.

Sometimes Tennessee court articulate the requirements of res ipsa loquitur somewhat differently than they were articulate in *Jenkins*. The alternative formulation is along the following lines: "A plaintiff relying on the doctrine of res ipsa loquitur must demonstrate (1) what object or condition caused the injury, (2) that the object or condition that caused the injury is of a kind that does not ordinarily occur in the absence of negligence, and (3) that the instrumentality causing the injury was under the defendant's exclusive control when the injury occurred." *Miller v. Jackson-Madison Cnty. Gen. Hosp. Dist., No.,* W201601170COAR3CV, 2016 WL 7166410, at *4 (Tenn. Ct. App. Dec. 8, 2016)

The Court finds that res ipsa loquitur is inapplicable under the alternative articulation because the second and third elements are not satisfied. For purposes of this tri-partite test, Plaintiff can show that an *object* (the lounge chair) caused her injury; but as discussed above, it would be inapt to say that *the alleged condition* at issue (poor lighting) caused Plaintiff's injury. So the Court applies the second and third element based on the lounge chair causing her injury. But it cannot be said that a lounge chair (or more precisely, its presence in the pool area) does not ordinarily occur in the absence of negligence. And even though the Court is careful not to construe the notion of "the defendant's exclusive control" too broadly, the Court cannot say that the chair here at issue was under Defendant's exclusive control. Typically a hotel and its guests would fully expect guests to exercise some control over the chairs insofar as guests wish to reasonably move

the chairs around, and the Court does not see why things would be any different in the instant case. Moreover, as Plaintiff approached the chair (fully seeing it, as is undisputed), it was subject to her control, as she would have had both the ability and the prerogative to move it herself as she saw fit.

Thus, Plaintiff "failed to show that the 'instrumentality' that caused h[er] alleged fall was in Defendants' exclusive control [and] failed to show that h[er] alleged injury was one which ordinarily doesn't occur in the absence of negligence" on the part of someone other than the plaintiff. *Est. of Shelton v. Greeneville Urgent Care & Occupational Med. Clinic*, 605 S.W.3d 463, 474 (Tenn. Ct. App. 2019) (declining to find, where the plaintiff's complaint was that when he used a footstool to mount a medical examination table the stool slipped from under his foot, causing him to fall, "the case . . . to be the type where res ipsa loquitur applies").

Thus, Plaintiff cannot avail herself of res ipsa loquitur to circumvent the need for direct evidence to prove breach of duty and causation-in-fact.

   3. *Proximate cause*

Under Tennessee law, a defendant's conduct is the proximate cause of the plaintiff's injury if three conditions are satisfied:

> (1) the [defendant]'s conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the [defendant] from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Cotten v. Wilson*, 576 S.W.3d 626, 638 (Tenn. 2019) (citations omitted).

Defendant has met its burden in showing that no reasonable jury could find that Defendant's conduct was a proximate cause of Plaintiff's injury. Specifically, there is no

genuine dispute that Defendant's conduct was not a "substantial factor" in bringing about Plaintiff's injury.

As explained above, Plaintiff testified that she saw the chair that she tripped over prior to reaching it. Plaintiff seemingly attempts to explain this testimony by arguing that "Plaintiff thought she could carefully walk as she did even though the chairs and decking were not readily apparent to her because the lounge chairs blended in with the wood decking below the lounge chairs." (Doc. No. 49 at 15). Thus, Plaintiff's proposed chain of causation seems to be that Defendant's conduct created an area that was lit enough to make Plaintiff reasonably think she could proceed but was also dark enough to cause Plaintiff to be incorrect about that. But the evidence does not support the idea that Plaintiff did not in fact see the chairs and that she only *thought* she could see well enough to walk safely on her chosen path to the hot tub. In her testimony, she states, repeatedly and categorically, that she saw the relevant chairs, not that she mistakenly thought she saw the chairs. (Doc. No. 46-1 at 18, 43). When asked "if you had looked down [immediately prior to tripping over it], you would have been able to see the chair?" she responds without qualification "Yes." (Doc. No. 46-1 at 43). She answers the same in response to "you could see the [relevant] chair prior to reaching that chair, correct?" *Id.* At her deposition, she was not asked merely whether (at the time in question), she thought she could see *generally* (as in, see well enough to be fooled into thinking incorrectly that she could safely take a particular path); instead, she was asked whether she saw *the specific chair that she ended up tripping over*, and to that question, she answered unqualifiedly in the affirmative. Plaintiff's assertion in her brief that the chairs (which would include the chair she ended up tripping over) were not "readily apparent" rings hollow, and, more to the point is irrelevant because

here whether it matters not whether the chair was "readily apparent"—an amorphous phrase that Plaintiff apparently uses in her briefing to obfuscate the fact that she saw the chair, whether or not it was "readily apparent"—given that Plaintiff by her own admission saw the chair. Because Plaintiff saw the chair prior to tripping over it and could have avoided her injury by looking down as she arrived at the chair, the Court concludes as a matter of law that Defendant's alleged conduct cannot be said to have been a "substantial factor" in creating her injury.

Thus, based on facts not in genuine dispute, the Court concludes that there was no proximate cause. Plaintiff's negligence claim therefore fails for lack of proximate cause, just as it fails alternatively for lack of causation-in-fact as discussed above.

## CONCLUSION

Plaintiff's alleged injuries are unfortunate, but it does not follow that Defendant is liable for them. For the reasons discussed herein, the Court will grant Defendant's motion for summary judgment (Doc. No. 44). An appropriate accompanying order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE